Anthony J. MALCAK, Plaintiff,

v.

Nicholas J. COONEY, et al., Defendants.

No. 81 C 6549.

United States District Court,
N. D. Illinois, E. D.

March 2, 1982.

Richard J. Billik, Richard T. Sikes, Chicago, Ill., for plaintiff.

---

Patrick T. Murphy, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Anthony J. Malcak ("Malcak") sues the Westchester Park District ("District") and its four-person Board of Directors (the "Board"). Malcak claims he was fired from his job as District's Director of Parks and Recreation ("Director") because of his political affiliations, which are different from those of the Board members, so that the firing impinged upon his First Amendment freedom of association. *Elrod v. Burns*, 427 U.S. 347, 372–73, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). Defendants have moved for a determination [1] that Malcak could be discharged for political reasons because he occupied a "policymaking" position, which *Elrod* and its progeny exempt from their general prohibition. For the reasons contained in this memorandum opinion and order, defendants' motion is denied.

### Facts

Malcak was Director from 1972 until June 30, 1981. In April 1981 at least two new members were elected to the four-member Board: Robert Cooley and Nicholas J. Cooney, whose affidavits say they are members of different Village-based political parties (the CAP and NOW parties, respectively). Another CAP party member, William Perch, was also elected at that time (Perch's affidavit states he "was originally appointed as a Commissioner by the previous Board of Commissioners"). Board Member Thomas E. Stangler was first elected as an independent candidate in 1977 and was re-elected in 1981. In any event, the Complaint alleges the new Board members were "politically different" from the Board members who had retained Malcak in his job.

Malcak claims he was fired as Director on account of those "political differences" (though neither the Complaint nor his memorandum in opposition to the pending motion gives much content to the charge). Nonetheless defendants do not effectively challenge that claim.[2] Accordingly this opinion will treat only with the proposition that terminating Malcak for political reasons was permissible because he was a "policymaker." To evaluate that issue it is obviously necessary to examine the nature of Malcak's job.

Neither side has provided the Court with any affidavit or other admissible evidence describing Malcak's work. Instead defendants have submitted the District's most recent Manual of Operational Policies (the "Manual"), Section IV, Part IIA of which (Appendix A to this opinion) elaborates at length on Director's responsibilities, duties and powers. They are broad indeed, intended generally to implement the Board's policies (of course Director is an administrator and cannot vote with the elected Board).

### Director's Status as "Policymaker"

Two recent decisions control determination of the current question for summary judgment purposes. In *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980) Justice Stevens wrote for the Court:

1. Defendants' original motion was styled "Motion To Dismiss and, Alternatively, for Summary Judgment." Because it required consideration of matters outside the Complaint, it could not qualify as a Fed.R.Civ.P. ("Rule") 12(b)(6) motion. It was also inappropriate for conventional summary judgment treatment, for defendants plainly contest whether Malcak's firing was in fact political. That is clearly a material issue if defendants lose on the "policymaking" issue discussed in the text, and the case law discourages (if it does not altogether bar) a summary judgment movant from holding back on a material fact issue. *W.H. Brady Co.*

*v. LEM Products, Inc.*, 521 F.Supp. 676 (N.D.Ill. 1981). So defendants essentially seek a ruling on a single issue of law, which comes closer to a Rule 16 motion than to any other provision of the Rules.

2. Each Board member's affidavit states only in conclusory form that Malcak was not discharged due to his political affiliation. But defendants' supporting and reply memoranda ignore that possible ground for summary judgment, discussing only their "policymaker" theory.

[T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

Based on that test the Court went on to find that continued employment of an assistant public defender could not properly be conditioned upon his allegiance to the political party in control of the county government. That result flowed from the primary responsibility of the assistant public defender: to represent individual citizens in controversy with the state. *Id.* at 519, 100 S.Ct. at 1295.

Our Court of Appeals applied *Branti* in *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir. 1981) and elaborated on Justice Stevens' inquiry. There Lyons Township's Senior Citizens Coordinator had been discharged because of political affiliation. On appeal a trial court directed verdict was vacated and remanded for a factual determination of the Coordinator's status under *Elrod*. *Nekolny* stated the standard (*id.* at 1170):

> The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation.

It made plain (*id.* at 1160) that "determination of status as a policymaker in many cases presents a difficult factual question." And it also cautioned (id. at 1169–70) that a "narrow definition of who is a policymaker necessarily increases the chances of 'undercut[ting] ... the implementation of the policies of the new administration, policies presumably sanctioned by the electorate'" (quoting *Elrod*, 427 U.S. at 367, 96 S.Ct. at 2687).

In *Nekolny* the Senior Citizens' Coordinator was one of the Township's four highest

paid employees. His functions included conducting feasibility studies and other research as to the nature and extent of programs for senior citizens. His proposals were directed and—on at least one occasion—directly acted upon by the Town Supervisor and Board of Auditors. Upon those facts the Court of Appeals said the fact the Coordinator "did not have final decisionmaking authority is not determinative" (653 F.2d at 1170). It held a jury issue was created as to the plaintiff's "policymaker" status.

This case too poses the sort of "difficult factual question" treated in *Nekolny*. Defendants' affidavits make clear that the Board was comprised of part-time unpaid members who relied heavily on the Director to implement policy. But neither the affidavits nor the Manual[3] come really close to establishing as a matter of law that political affiliation is, in *Branti* terms, "an appropriate requirement for the effective performance of public office involved." Accordingly a genuine issue of fact exists, precluding a ruling of law in defendants' favor.

Though Director's duties and powers are expressed in sweeping terms, the Manual says Director "serves as a *technical advisor* and *consultant* to the Park Board and *administers* the policies laid down by that authority" (emphasis supplied). All Director's decisions—even those having to do with permanent personnel—are ultimately reversible by the Board. *Nekolny* teaches that absence of "final decisionmaking authority is not determinative," but it does not say that factor is wholly irrelevant.

On defendants' motion this Court must draw all reasonable inferences favorable to Malcak. One such inference from the Manual's provisions is that Director need be no more than the Board's executive arm—a nonpartisan "technocrat" who carries out the general policies of the Board without

---

**3.** Even though this opinion speaks of the Manual (the only evidence tendered to the Court), it must be emphasized that such a document should scarcely control the issue presented by this case. Tables of organization and paper job descriptions most often differ materially from the way officials function in the real world. And it is the real world relationship between Director and Board that will ultimately decide the answer here (see n.4).

fear or favor and with efficiency as his only goal. In that case, political affiliation would certainly not be "an appropriate requirement for the effective performance" of Director's job.

Indeed this Court views not only the nature of Director's job but also the nature of the political parties themselves as relevant. Village "politics," albeit nominally party-labeled, do not necessarily involve the same kind of partisanship as the major political parties. And that difference must bear on whether, as *Branti* put it, "party affiliation is an appropriate requirement for ... effective performance...." Because there has been no input on that subject, the equation is incomplete.

But to return to the *Nekolny* formulation, it is thoroughly unclear on the current state of the record whether Malcak's position accorded him, either directly or indirectly, "meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." While the Manual and defendants' affidavits *could* be read to portray Director as a Svengali who holds the unpaid part-time Board members in his thrall, they may also reasonably be read as noted above, casting the Director as one who faithfully executes his superiors' instructions.

### Conclusion

Defendants cannot now avert a trial on the merits. At that time the *reality* of the power relationship between Director and the Board will be resolved. *Cf. Ness v. Marshall*, 660 F.2d 517, 520–22 (3d Cir. 1981).[4] Defendants' motion is denied.

### APPENDIX

### SECTION IV—ADMINISTRATION

Part II—Job Analyses and Descriptions

A. Director of Parks and Recreation is the chief executive officer in charge of the parks and recreation departments and its personnel. He is responsible for the administrative management of the public parks, playgrounds, tot lots, buildings, community center, and all other recreation facilities; and for the administration of a comprehensive recreation program for the entire community.

The Director serves as a technical advisor and consultant to the Park Board and administers the policies laid down by that authority. The Director of Parks and Recreation has executive responsibility for both the parks and recreation functions of the district, and for the maintenance of a high level of park-recreation service through the efficient administration of both.

1. Duties

#### Administrative

a. Supervises the work of the park and recreation departments in accordance with the policies established by the Board of Park Commissioners.

b. Organizes and directs an efficient administration for department.

c. Establishes, reviews and co-ordinates procedures to the end that maximum service may be provided at reasonable costs.

d. The Director approves payroll plus all ordinary bills. This would generally be anything under $150 plus items approved by committee to $300.

#### Program

a. Develops a broad diversified program of recreation activities and services to meet the needs of the community.

---

**4.** Defendants correctly point out that the *Ness* court relied on the statutorily-specified duties of the City Solicitor in granting summary judgment to defendants. But that case is hardly this one. As the opinion there noted, the City Solicitor is by definition so much a "trusted advisor" of the Mayor that the Solicitor could not perform his undisputed functions—like rendering legal opinions, drafting ordinances, negotiating contracts—without the Mayor's absolute personal confidence. That is implicit in *every* lawyer-client relationship (at least where the lawyer is at an appreciable level of seniority and personal contact). Here by contrast the Manual does *not* itself establish that a similar degree of trust and confidence must exist between Board members and Director.

b. Supervises the organization and conduct of the community recreation programs, including both those activities under active leadership and others which primarily require provision for space, facilities, and general administrative service.

### Staff

a. Recruits, selects, and employs or recommends the employment of department personnel.

b. Organizes, assigns, and trains department personnel, develops and maintains good work relationships among staff members.

c. Established and develops a program for continuing use of volunteers in the recreation program.

### Areas and Facilities

a. Superintends the acquisition, planning, design, and construction of recreation and park facilities under the control of the district.

b. Operates and maintains all areas and facilities under departmental control for optimum use in support of the community recreation program.

c. Establishes close working relationships with and serves ex-officio as consultant on park and recreation matters to public and voluntary community agencies concerned with city planning, housing, public welfare, education, and other subjects closely related to community recreation.

### Planning and Research

a. Studies and analyzes the effectiveness of the district's services and reports to the Board.

b. Studies conditions, needs, and trends affecting the park and recreation needs of the Village and reports to the Board.

c. Prepares and recommends adoption of long-range plans and immediate needs to meet the Village's requirements for adequate recreation space, facilities, programs and personnel.

d. Studies and keeps informed of developments in the park and recreation field.

### Public and Community Relations

a. Interprets to the public the community recreation program and its philosophy and objectives through all suitable means including the use of volunteers and staff members as well as news media.

b. Promotes the public use of recreation facilities, areas and equipment for group and individual play, recreation and relaxation through a continuing program of education.

c. Establishes and maintains cooperative planning and working relationships with other local community agencies, governmental, voluntary, and private, and with state, regional, and national agencies concerned with parks, recreation, conservation, and related fields.

### Records and Reports

a. Maintains systematic and accurate records of district activities and services, personnel, and property.

b. Prepares and issues regular and special reports for use by Board, Staff, Community officials, and others, as well as for the information of the Community.

In the execution of these duties, the Superintendent must at times vary the emphasis of geographic area, programs, staff, and facilities to meet the situation(s) at hand, but the executive position with the District includes and involves the responsibility for all the above. As the district expands its facilities, services, and personnel, the Superintendent must delegate the authority for, and the responsibility of, various administrative programs, and maintenance functions to subordinates.

2. Minimum Qualifications

*Either* graduation from a college or university of recognized standing with a bachelor's degree based on a major in recreation

leadership including supervised field work; or graduation from a college *or* university of recognized standing with a bachelor's degree based on a major in park administration or a closely related field and special emphasis equivalent to a minor concentration in recreation leadership, including supervised field work in park administration or in recreation.

*And* proven successful and progressive experience in recreation leadership in a supervisory or executive capacity; or in supervisory or executive capacity; or in supervisory or executive work combining recreation and park responsibilities and duties.

3. Special Qualifications

   a. Thorough knowledge of the theory and philosophy of recreation and ability to interpret this philosophy to others.

   b. Understanding of the problems of a community in relation to recreation, and ability to formulate and administer recreation programs to meet specific community needs.

   c. Professional administrative skill in the organization, development, and maintenance of a comprehensive community recreation program involving the operation of areas and facilities and the recruitment, selection, training, and supervision of personnel.

   d. Professional understanding of the varied recreation activities which make up a community recreation program, and technical competence in directing their optimum use to meet the needs of all ages and interests.

   e. Understanding of the function, design, and maintenance of parks and recreation areas and facilities; and ability to superintend a program of acquisition, construction, and maintenance of recreation and park areas, and facilities.

   f. Professional administrative skill in the supervision of technically-trained personnel from such fields as landscape architecture, civil engineering, forestry, and horticulture, in the planning and operation of parks, recreation areas, and facilities.

   g. Capacity for cooperating with and interpreting recreation and parks to related public, voluntary, and private organizations, and the public.

   h. Skill in communication through speech and writing.

   i. Executive capacity for decision-making and implementation of policy, coupled with extensive knowledge of principles and techniques of management as applied to recreation and parks.

   j. Initiative, creativity, perseverance, and the ability to inspire the continuing best efforts of others.

4. Responsibilities, Duties, and Powers

   a. He shall attend all meetings of the Board, shall be a member of all committees, and shall attend all meetings of the same, except when his own contract, or salary, is being considered.

   b. The Superintendent of Parks and Recreation will either personally or through designated authority,

      1. Develop a job description plan and maintain such a plan.

      2. Develop a compensation plan based on job descriptions.

      3. Administer the systems of employment and of promotions.

      4. Select, or delegate the responsibility to select, all employees as needed to fill both temporary and permanent positions; this being done with the concurrence of the Board on the permanent staff positions (full or part time) only.

   c. He shall assist and advise the Finance Committee Chairman in the preparation of the annual budget for its adoption by the Board and shall administer the operational phases of the district within the limits of the budget as enacted by the Board, acting at all times in accordance with legal requirements and adopted policies of the Board.

d. He shall advise to the best of his ability that all constitutional or statutory laws or state regulations governing the parks, and all rules and regulations of the Board are effectively carried out.

e. The Superintendent of Parks and Recreation shall communicate, or cause to be communicated, to all employees all actions of the Board relating to the several employees, and all communications to the Board by employees shall be through him.

f. The Superintendent of Parks and Recreation shall have the power to make such rules and give such instructions to employees as may be necessary to make the policy and/or rules and regulations of the Board effective; and in all matters not covered by these regulations, he shall act on his own discretion if action is necessary and shall report his actions to the Board for its information and approval.

TERMS OF EMPLOYMENT:

The position of Superintendent of Parks and Recreation is an appointed one and a responsibility of the Board of Commissioners. The appointment is for an indefinite period and by mutual agreement ·with either party serving proper notice of 60 days upon termination of employment.

B. Administrative Assistant:

The Administrative Assistant is responsible for the administrative research, planning, organization and supervision of the parks and recreation departments and their personnel as the general assistant to the Superintendent of Parks and Recreation. The Administrative Assistant represents the Superintendent of Parks and Recreation at conferences and meetings and other relationships as assigned by the Superintendent of Parks and Recreation, and acts for the Superintendent of Parks and Recreation in his absence in administrative matters. The Administrative Assistant exercises professional administrative judgment with con-siderable latitude for independent action and initiative in the investigation, formulation, and promotion of a comprehensive park and recreation program. The Administrative Assistant performs technical and staff-level work for the Superintendent of Parks and Recreation by analyzing administrative procedures, recommending improvements on the systems and methods of operation, planning, coordinating and control of administrative activities essential to the successful carrying out of village-wide park and recreation programs. Research for budget preparation, inventory control, and general administration are important areas of responsibility. Emphasis may be placed on long-range planning and investigations into community park and recreation needs affected by population and economic changes. To perform effectively in this position, the employee must be generally familiar with the program and maintenance operations. Although exercising considerable independent judgment, his work is checked regularly during the conduction of investigations and his reports are reviewed by the Superintendent of Parks and Recreation for content and completeness and may be corrected, consolidated, and/or condensed into or with other reports and/or recommendations.

1. Duties

a. Analyzes departmental administrative operating practices and procedures, record-keeping systems, forms, office layouts and personnel requirement.

b. Prepares, maintains, and recommends revision in administrative procedures, forms, charts and layouts to increase the district's effectiveness.