**Donald KYLE, et al., Plaintiffs,**

v.

**CITY OF OAK FOREST and James Malecky, Mayor of Oak Forest, Defendants.**

No. 85 C 5712.

United States District Court,
N.D. Illinois, E.D.

June 20, 1986.

Rick M. Schoenfield, Ettinger & Schoenfield, Ltd., Chicago, Ill., for plaintiffs.

James R. Schirott, Charles E. Hervas, James G. Sotos, Schirott & Associates, P.C., Itasca, Ill., Medard M. Narko, Medard M. Narko & Associates, Oak Forest, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

The instant case came before this Court for trial on the merits of plaintiffs' complaint. This Court has heard testimony on plaintiffs' claims, has received exhibits into evidence, and has examined the parties' Agreed Stipulation of Uncontested Facts. After carefully considering this information, this Court does hereby enter the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

### A. *The Parties*

1. Plaintiffs are all former employees of the City of Oak Forest, Illinois.

2. Plaintiffs Kyle, Schoen, Roche, Harralson, Calder and Pasek were employed as Oak Forest auxiliary police officers. These plaintiffs were appointed and consecutively reappointed to one-year terms by the mayor of Oak Forest with the advice and consent of the City Council. Plaintiffs' employment with Oak Forest terminated on or about May 1, 1985.

3. Plaintiff Ulloa was also employed by Oak Forest. Ulloa was employed as a paid-on-call firefighter. Ulloa was appointed and reappointed to one-year terms as a part-time firefighter by the mayor of Oak Forest with the advice and consent of the City Council. Like the auxiliary police, Ulloa's employment with Oak Forest terminated on or about May 1, 1985.

4. Defendant Oak Forest is an Illinois municipal corporation.

5. Codefendant James Malecky is the Mayor of Oak Forest. In 1985, Malecky ran as a mayoral candidate in a hotly contested election. Malecky was elected and assumed the duties of his office in April 1985. Prior to the election, Malecky had been an Oak Forest City Council alderman from 1977 to 1984.

### B. *Plaintiffs' Employment History and Termination*

6. Plaintiff Kyle's employment with Oak Forest commenced in 1969. Kyle was appointed to a one-year term as an auxiliary police officer by the then current mayor with the advice and consent of the City Council. Kyle had been consecutively reappointed to one-year terms until 1985. In 1977, Kyle was promoted to the rank of

lieutenant. In 1978 and 1979, Kyle successfully completed a training program conducted by the Cook County Sheriff's Office on behalf of the Illinois Local Governmental Law Enforcement Officers Training Board.

7. Plaintiffs Schoen and Harralson's employment with Oak Forest began in 1981. Like Kyle, Schoen and Harralson were appointed and consecutively reappointed to one-year terms as auxiliary police officers. Harralson successfully completed training as an Emergency Medical Technician in 1976.

8. Plaintiff Roche served as an auxiliary police officer from 1974 to 1979. Roche had been promoted to the rank of sergeant in 1977. Roche's employment with Oak Forest resumed in 1983. Roche was appointed and consecutively reappointed to one-year terms as an auxiliary police officer. In 1978 and 1979, Roche successfully completed a training program conducted by the Cook County Sheriff's Office on behalf of the Illinois Local Governmental Law Enforcement Officers Training Board. Also in 1979, Roche received an award for outstanding services to the Oak Forest Police Department. Roche served as a military police officer where he attained the rank of Specialist Fourth.

9. Plaintiff Calder's employment with Oak Forest began in 1977. Calder was appointed and consecutively reappointed to one-year terms as an auxiliary police officer. Calder received a commendation in 1979 from the Oak Forest Police Department for his work in apprehending a suspect wanted for murder and armed robbery.

10. Plaintiff Pasek's employment with Oak Forest began in 1984. Pasek was appointed to a one-year term as an auxiliary police officer.

11. Plaintiff Ulloa's employment with Oak Forest began in 1983. Ulloa was appointed and consecutively reappointed to one-year terms as a paid-on-call firefighter. Ulloa successfully completed training as an Emergency Medical Technician in 1985.

12. Political affiliation is not a legitimate requirement of any of the plaintiffs' jobs.

13. None of the plaintiffs were policy makers or had a confidential relationship with a policy maker.

14. It was the policy and custom in Oak Forest for the mayor, with the advice and consent of the City Council, to appoint auxiliary police officers to one-year terms.

15. It was also the policy and custom in Oak Forest for the mayor, with the advice and consent of the City Council, to appoint paid-on-call firefighters to one-year terms.

16. As the Mayor of Oak Forest, James Malecky is a municipal policy maker for Oak Forest, including policy making regarding municipal employment.

17. Mayor Malecky, acting in his official capacity and pursuant to an established policy, decided not to reappoint plaintiffs and failed to reappoint plaintiffs to additional one-year terms.

18. In 1985, defendant Mayor Malecky neither reappointed any of the plaintiffs nor submitted their names to the City Council for reappointment. Plaintiffs' employment terminated at the end of each plaintiff's last one-year appointment.

C. *Relevant Statutes and Ordinances*

19. Oak Forest Ordinance No. 752 is entitled "An Ordinance Establishing The City of Oak Forest Auxiliary Police" and Section 1 states that:

> The Mayor, with the advice and consent of the City Council, may appoint auxiliary policemen in such number as the Corporate authorities shall from time to time deem necessary. The appointment of any or all auxiliary policemen may be terminated by the City Mayor subject to the advice and consent of the City Council.

20. Oak Forest Ordinance No. 1364 is entitled "An Ordinance Amending Ordinance Nos. 1237, 646 and 480, Being An Ordinance Creating And Establishing A Department of the City of Oak Forest, Cook County, Illinois, Which Shall Be

Known As The Oak Forest Fire Department." Section 3 of the ordinance states that:

> The Fire Department shall consist of as many members as may be determined by Ordinance; active members who are part time Fire Fighters serving only on call are part of the Oak Forest Fire Department, and are subject to all rules and regulations in such case made and provided.

21. The Oak Forest City Council never approved any resolution or motion to terminate the employment of Donald Kyle, Bernard Roche, Robert Schoen, Steve Pasek, Robert Calder, John Harralson, Lupe Martinez, Robert Malone, Mike Varkalis or Donald Munchanski as auxiliary police officers.

22. No Oak Forest ordinance provides that auxiliary police officers or paid-on-call firefighters shall serve for one-year terms or for any specific length of time.

23. Ill.Rev.Stat. Ch. 24, § 10–2.1–17 is entitled "Removal or Discharge" of officers and members of a fire or police department, and provides in part as follows:

> Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense.... The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time....

24. Ill.Rev.Stat. Ch. 24, § 10–2.1–26 is entitled "Application of Act" and provides as follows:

> The provisions of [§ 10–2.1–1 et seq.] shall apply only to full-time firemen and full-time policemen of a regularly constituted fire or police department and not to any other personnel of any kind or description.

### D. *Political Participation*

25. In the 1985 Oak Forest mayoral election, James Malecky ran against the incumbent James Jesk.

26. The Oak Forest 1985 mayoral election was hotly contested. Mayor Malecky believed that he was the target of many personal charges. He also believed that some of these charges were being spread by the Jesk campaign.

27. Donald Kyle actively supported James Jesk in the 1985 mayoral campaign by serving as his assistant campaign manager. Jesk is also Kyle's supervisor at Andrew System Inc.

28. Mayor Malecky knew that Kyle supported Jesk.

29. Kyle's son, Donald Jr., also campaigned for Jesk in 1985 and Mayor Malecky knew that Donald Kyle, Jr. supported Jesk.

30. Bernard Roche actively supported James Jesk in the 1985 mayoral election by campaigning for Jesk and displaying a sign for Jesk on his lawn.

31. Mayor Malecky knew that Roche supported Jesk.

32. Mark Ulloa actively supported James Jesk in the 1985 mayoral election by campaigning for him. Ulloa also displayed a Jesk sign at Ulloa's home.

33. Mayor Malecky knew that Ulloa supported Jesk.

34. Robert Schoen actively supported Jesk in the 1985 mayoral campaign by talking to voters and by placing a Jesk sign on his lawn.

35. Mayor Malecky knew that Schoen supported Jesk.

36. Robert Calder supported Jesk in the 1985 mayoral election by passing out literature for two hours, by placing a Jesk sign in his window, and by supporting him on occasion when the election was discussed.

37. Robert Calder's father actively supported Jesk in the 1985 mayoral election.

38. Mayor Malecky knew that Robert Calder and his father supported Jesk.

39. Mayor Malecky did not reappoint Calder's father to the Oak Forest Civil Service Commission.

40. Mayor Malecky was an Oak Forest alderman from 1977 to 1984. During these eight years he consistently voted to approve the auxiliary police appointments, except in 1983 when he was absent during the voting period. In 1978 and 1979 he seconded the motions to approve these appointments, and in 1982 Malecky made the motion to approve the appointments.

41. In 1983 and 1984, Mayor Malecky, voting in his aldermanic capacity, voted in favor of Mark Ulloa's appointments.

42. The first official notification to Kyle, Calder, Harralson, Pasek, Schoen, Roche, Malone, Munchunski and Martinez that they would no longer be auxiliary police officers occurred when they received a letter from the police chief, dated April 30, 1985, in which they were told to return their equipment as soon as possible.

43. In the May 22, 1985 meeting of the Oak Forest City Council, Mayor Malecky stated that his decision not to reappoint various auxiliary police officers and a paid-on-call firefighter was not based upon the performance of the employees' duties.

44. Mark Ulloa was not terminated from his employment as a paid-on-call firefighter by the Board of Fire and Police Commissioners, nor was he given written notice of the reasons for his termination, or a hearing regarding whether there was cause to terminate him.

45. Mark Ulloa earned four dollars ($4) per hour as a paid-on-call firefighter.

46. Auxiliary police lieutenants earn five dollars ($5) per hour, sergeants earn four dollars and fifty cents ($4.50) per hour, and other officers earn four dollars ($4) per hour.

47. Mayor Malecky reviewed the personnel files of all employees whom he did not reappoint. Only after James Malecky became Mayor did he have an opportunity to review the City's personnel files relative to the plaintiff's employment with the City.

48. None of the plaintiffs were ever promised that their appointments were for an indefinite period of time.

49. Plaintiffs received a new commission card each year they were employed by the City. The commission cards indicated that the reappointment was for a one-year term.

50. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

## II. CONCLUSIONS OF LAW

Based on the foregoing findings of fact, this Court makes the following conclusions of law:

1. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1443 and 42 U.S.C. § 1983.

2. Venue properly lies with this Court pursuant to 28 U.S.C. § 1391.

### A. *Count I*

3. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs allege that defendant Mayor Malecky violated their constitutional rights of freedom of speech and association guaranteed by the First and Fourteenth Amendments of the United States Constitution. Plaintiffs contend that Mayor Malecky violated these rights when Mayor Malecky did not reappoint plaintiffs to their past employment positions. Plaintiffs allege they were not reappointed in retaliation for their campaign support for and activity on behalf of Mayor Malecky's political opponent.

4. Mayor Malecky contests plaintiffs' allegations that the terminations were politically motivated. Instead, Mayor Malecky suggests that plaintiffs were not reappointed for good cause and for legitimate reasons. Mayor Malecky claims that plaintiffs were not reappointed for a variety of the following reasons: health problems, incompetence, poor attitude, insufficient hours, improper use of city property,

incidents of indiscretion, and complaints by citizens.

5. Each plaintiff must satisfy various burdens of proof to prevail on his First Amendment and Fourteenth Amendment claim. In *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981), the Seventh Circuit set forth the proper allocation of these burdens of proof. First, each employee has the initial burden of showing that he engaged in constitutionally protected conduct. Second, each employee has the burden of proving by a preponderance of the evidence that the employee's participation in the protected conduct was a "motivating factor" in the defendant's decision not to reappoint the employee. If an employee carries his burden, then the burden shifts to the defendant to prove by a preponderance of the evidence that each plaintiff would not have been reappointed even if each employee had not supported or campaigned for the election of the defendant's opponent. These three burdens must be discussed separately when applying them to the facts before this Court.

### 1. Constitutionally Protected Conduct

6. Plaintiffs maintain that they were engaging in constitutionally protected conduct when they were actively supporting and campaigning for Mayor Malecky's opponent. Plaintiffs supported Mayor Malecky's opponent in the following manner: working on the opponent's campaign, placing signs in support of the opponent at their homes, talking to voters, and passing out literature.

7. This Court holds that each plaintiff satisfied his initial burden of showing that his conduct was constitutionally protected. It is undisputed that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments of the United States Constitution. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1962). The right to associate with the political party and candidates of one's choice is an integral part of this basic constitutional freedom. *Kusper v. Pon-*

*tikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). These protections reflect this country's profound national commitment to the principle that debate on public issues and elections should be uninhibited, robust, and wide open. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This principle reflects on the fundamental understanding that competition in ideas and governmental policies is at the core of the country's electoral process.

### 2. Motivating Factor in Decision Not to Reappoint

8. Plaintiffs contend that their participation in constitutionally protected conduct was a "motivating factor" in Mayor Malecky's decision not to reappoint plaintiffs. Plaintiffs allege that the evidence presented at trial clearly establishes that Mayor Malecky did not reappoint plaintiffs because plaintiffs opposed Mayor Malecky and actively supported his opponent in the 1985 Oak Forest mayoral election.

9. Mayor Malecky maintains that plaintiffs failed to satisfy their burden of proving that political retaliation was a motivating factor in Mayor Malecky's decision not to reappoint plaintiffs. Mayor Malecky contends that the decision was not politically motivated. In fact, Mayor Malecky suggests that the trial evidence supports his conclusion that political involvement was not a motivating factor in Mayor Malecky's decision not to reappoint the plaintiffs.

10. This Court notes that a plaintiff need not prove that his participation in protected conduct was the "sole motivation" for his employment termination. *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981). In *Nekolny*, the Seventh Circuit held that a requirement of proving "sole motivation" would run the risk of not adequately protecting the victims of First Amendment violations. The *Nekolny* court reasoned that "one can scarcely imagine an employee about whom an employer could not find some dissatisfaction apart from that employee's protected conduct. The claim of a public employee who was termi-

nated in fact for protected conduct could too easily be defeated because his employer asserted a convincing but nonmotivating reason for the discharge." *Id.* at 1168. Therefore, the plaintiffs before this Court are only required to show by a preponderance of the evidence that a motivating factor in Mayor Malecky's decision not to reappoint plaintiffs was plaintiffs' active involvement in supporting and campaigning for Mayor Malecky's opponent.

■ 11. This Court holds that each plaintiff met his burden of showing by a preponderance of the evidence that his participation in the protected conduct was a motivating factor in Mayor Malecky's decision not to reappoint him. The evidence supporting this Court's determination is summarized in the following paragraphs.

12. The evidence shows that Mayor Malecky was an alderman of Oak Forest from 1977 to 1984. During these years, Mayor Malecky never voiced any complaint against any of the plaintiffs. Acting in his aldermanic capacity, Mayor Malecky consistently voted to approve the reappointment of the auxiliary police, except in 1983 when Mayor Malecky did not participate in the voting. In 1978 and 1979, Mayor Malecky seconded the motion before the City Council to approve the reappointments of the auxiliary police. In 1982, Mayor Malecky made the motion to approve the reappointments.

13. Mayor Malecky was equally supportive of firemen candidates. Specifically, in 1983 and 1984, Mayor Malecky, acting in his aldermanic capacity, voted in favor of reappointing plaintiff Mark Ulloa to the position of paid-on-call firefighter.

14. Mayor Malecky argues that his aldermanic voting record should be discounted. As an alderman, Mayor Malecky asserts he voted in favor of reappointing plaintiffs as mere acts of cooperation with the former mayor. This Court is not persuaded by Mayor Malecky's assertion.

15. The evidence shows that Mayor Malecky was fully aware of plaintiffs' political participation and affiliation during the 1985 mayoral campaign. Mayor Malecky stipulated that he knew that plaintiffs actively supported Mayor Malecky's opponent, James Jesk. Plaintiffs supported Jesk in the following manner: Kyle served as Jesk's assistant campaign manager; Schoen talked to voters; Calder passed out literature; and Roche, Ulloa, Schoen, and Calder each placed a sign in support of Jesk's candidacy upon his own lawn.

16. The evidence also demonstrates that Mayor Malecky chose not to reappoint ten of the 17-man auxiliary police unit after the election. Coincidentally, all ten nonreappointed policemen had actively supported Mayor Malecky's opponent in the election. In contrast, all auxiliary policemen who had supported Mayor Malecky were reappointed.

17. The testimony of the nonreappointed plaintiffs reveals their belief that plaintiffs were not reappointed as a form of political retaliation and not based on the performance of their duties. Independent evidence supports plaintiffs' beliefs and directly contradicts Mayor Malecky's assertions. For example, during the May 22, 1985 meeting of the Oak Forest City Council, Mayor Malecky stated that his decision not to reappoint the auxiliary policemen was based on criterion other than the past performance of plaintiffs' duties. At that same meeting, Mayor Malecky announced that he had no complaint about the competency, service, or job cooperation of any plaintiff.

18. Similarly, Mayor Malecky did not reappoint plaintiff Ulloa to a position as a paid-on-call firefighter. Mayor Malecky knew that this firefighter actively supported Mayor Malecky's opponent. Ulloa testified that he believed he was not reappointed because he campaigned for Mayor Malecky's opponent. In addition, at the May 22, 1985 Oak Forest City Council meeting, Mayor Malecky revealed that his decision not to reappoint Ulloa was not based upon the performance of Ulloa's duties. Like Mayor Malecky's statement concerning the auxiliary policemen, Mayor Malecky stated that Mayor Malecky had no

complaint about Ulloa's competency, service, or job cooperation.

19. In sum, the evidence establishes that Mayor Malecky never objected to plaintiffs' performance of their duties prior to the election date. Moreover, Mayor Malecky selectively chose not to reappoint only those individuals who actively opposed his candidacy for Mayor. Finally, Mayor Malecky acknowledged that his decision not to reappoint the plaintiffs was based on criterion other than the performance of plaintiffs' duties. After careful consideration, this Court holds that each plaintiff proved by a preponderance of the evidence that a motivating factor in Mayor Malecky's decision not to reappoint that plaintiff was that plaintiff's active support of Mayor Malecky's opponent in the mayoral election.

### 3. Nonreappointment Regardless of Political Campaigning

20. Although this Court holds that a motivating factor in Mayor Malecky's decision not to reappoint plaintiffs was plaintiffs' campaign support for Mayor Malecky's opponent, this Court's analysis is not yet complete. This Court must now determine whether Mayor Malecky carried the shifted burden by proving by a preponderance of the evidence that he would not have reappointed each plaintiff even if each plaintiff had not supported or campaigned for the election of Mayor Malecky's opponent.

21. Mayor Malecky believes that he offered sufficient evidence to establish that his decision not to reappoint plaintiffs would have been made even in the absence of any alleged political participation. Mayor Malecky claims he made no decision regarding any reappointment until he had reviewed personnel material and until he had discussed the appointments with Fire Chief Waite and Police Chief Lexow.

22. This Court holds that Mayor Malecky failed to prove by a preponderance of the evidence that the decision not to reappoint each plaintiff would have occurred even if each plaintiff had not supported or campaigned for the election of Mayor Malecky's opponent. The evidence supporting this Court's determination is summarized in the following paragraphs.

23. At the May 22, 1985 Oak Forest City Council meeting, Mayor Malecky acknowledged that the candidates for both auxiliary police force and paid on-call fighters were not reappointed for reasons other than competence of service and job cooperation. Mayor Malecky also acknowledged that he had no specific problem with the performance of duties of the auxiliary police and firefighters.

24. Mayor Malecky's testimony contradicts his acknowledgements made at the May 22, 1985 City Council meeting. However, this Court does not find Mayor Malecky's testimony convincing.

25. Oak Forest Fire Chief Waite recommended that plaintiff Ulloa be reappointed as a paid-on-call firefighter by placing Ulloa's name upon the list of prospective reappointments. Fire Chief Waite testified that he informed Mayor Malecky that Waite's opinion of Ulloa was that Ulloa's "drill attendance and stuff was okay." The fire chief also testified that almost everyone he recommended over the past 15 years was reappointed. Even though Fire Chief Waite recommended Ulloa for reappointment, Mayor Malecky singled out Ulloa for incorporation into a group of appointed employees who would not be reappointed.

26. This Court finds that Mayor Malecky's decision not to reappoint plaintiffs was politically motivated in violation of plaintiffs' rights granted by the First and Fourteenth Amendments. Hence, Mayor Malecky failed to satisfy his burden of proof. This Court's determination is based on the credibility of the testimony heard at trial, the stipulated facts, and the strong circumstantial inference arising from the close proximity of Mayor Malecky's assumption of office and plaintiffs' subsequent dismissals.

### B. *Count II*

27. Procedural due process guarantees apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of hearing is paramount. But the range of interests protected by procedural due process is not infinite. *Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1971).

■ 28. A plaintiff is entitled to procedural due process guarantees of notice and hearing if that plaintiff is able to demonstrate that he has a property interest in continued employment. A property interest is not created by the Constitution. Rather, it is created by an independent source such as state laws, local ordinances or mutually explicit understandings. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. A plaintiff must, instead, have a legitimate enforceable claim of entitlement to it. *Roth* at 577, 92 S.Ct. at 2709.

29. In the employment context, an employee has a due process property interest in a job where there are restrictions on how the employee can be terminated. For example, an employee has a property interest in continued employment if he cannot be terminated absent a showing of sufficient cause for discharge. However, a plaintiff has the burden of proving a legitimate enforceable claim of entitlement to his continued employment. *Corbitt v. President & Board of Trustees,* 103 Ill.App.3d 818, 59 Ill.Dec. 470, 431 N.E.2d 1227 (1981).

30. In the instant case, plaintiffs were appointed to consecutive one-year employment terms as auxiliary policemen. Each plaintiff received a commission card each year they were employed by the City. Each commission card indicated that the appointment was for a one-year term. Plaintiffs were required to be reappointed every year in order to be continuously employed.

31. Plaintiffs were never promised that their appointments were for an indefinite period of time. Several parties testified that their understanding was that the auxiliary police appointments did not exceed their one-year appointment terms. These testifying parties included Officers Roche and Pasek, Fire Chief Waite, and Mayor Malecky.

32. Plaintiffs argue that they were entitled to procedural due process guarantees because a city ordinance granted plaintiffs a property interest in continued employment. Plaintiffs contend this ordinance granted plaintiffs a legitimate claim to consecutive annual appointments until each plaintiff's appointment was properly terminated. Plaintiffs also contend that they cannot be terminated absent a showing of sufficient cause for discharge.

33. The central issue in Count II is whether plaintiffs had a property interest in continued employment. Whether an ordinance confers a legitimate claim to continued employment, and hence grants a property interest in continued employment, can be determined only by an examination of the particular ordinance in question.

Oak Forest Ordinance No. 752 states that:

> The Mayor, with the advice and consent of the City Council, may appoint auxiliary policemen in such number as the Corporate authorities shall from time to time deem necessary. The appointment of any or all auxiliary policemen may be terminated by the City Mayor subject to the advice and consent of the City Council.

■ 34. This ordinance does not create a legitimate expectation of continued employment absent discharge for cause. Ordinance No. 752 affords no right to employment beyond one year. Rather, the ordinance merely provides procedural due process guidelines to protect city employees *during* their term of employment. *See Corbitt v. President & Board of Trustees,* 103 Ill.App.3d 818, 59 Ill.Dec. 470, 473, 431 N.E.2d 1227, 1230 (1981).

35. It is undisputed that Ordinance No. 752 granted plaintiffs a property interest in

their continued employment during each one-year appointment term. Plaintiffs had a due process property interest in their appointments because they had a legitimate claim to continued employment until the end of their appointment since there were restrictions on how the appointees could be terminated.

36. Plaintiffs, however, were not terminated during their one-year appointment terms. Instead, plaintiffs were simply not reappointed to additional one-year terms. Consequently, the restrictions placed on terminating plaintiffs during plaintiffs' one-year terms are inapplicable to the decision not to reappoint plaintiffs to additional one-year terms.

37. Plaintiffs do not have a legitimate claim to continued employment and hence have no property interest in continued employment. Absent a property interest, plaintiffs are not entitled to the privileges and immunities secured by the Fourteenth Amendment. Therefore, plaintiffs could not have been deprived of their due process guarantees of notice and hearing when they were not reappointed.

## C. *Count III*

38. Count III alleges that plaintiff Ulloa was deprived of his due process guarantees of notice and hearing when he was not reappointed as a part-time firefighter. Plaintiff Ulloa argues that he is entitled to these guarantees because a state law grants him a property interest in continued employment as a paid-on-call firefighter. Ulloa contends that Ill.Rev.Stat. ch. 24, § 10–2.1–17, made applicable to him by Oak Forest Ordinance No. 1364, creates a property interest in his continued employment.

39. Defendants concede that § 10–2.1–17 grants a property interest in some firefighters' continued employment. Defendants, however, argue that § 10–2.1–17 is applicable only to full-time firefighters and grants no property interest in continued employment to part-time firefighters.

40. Like Count II, the central issue in Count III is whether plaintiff had a property interest in continued employment. This Court's analysis is aided by the concise language used by the Illinois General Assembly. The General Assembly expressly distinguished between the treatment afforded full-time and part-time firefighters.

41. The Illinois legislature granted full-time firefighters a property interest in their jobs. Section 10–2.1–17 provides in part that no member of any fire department of any municipality that is subject to the provisions in § 10–2.1–1 et seq. shall be removed except for cause. Therefore, full-time firefighters are afforded the due process guarantee of notice and a hearing in the event they are terminated.

42. In sharp contrast, the Illinois General Assembly specifically declined to grant part-time firefighters a property interest in continued employment. Part-time firefighters do not enjoy the same removal protection afforded full-time firefighters. The termination for cause requirement that applies to full-time firefighters is inapplicable to part-time firefighters. Ill.Rev.Stat. ch. 24, § 10–2.1–26 states that the provisions of § 10–2.1–1 et seq., which includes § 10–2.1–17, shall apply only to full-time firemen and not to any other personnel. Therefore, cause need not be shown to remove part-time firefighters.

43. In the instant case, plaintiff Ulloa was a part-time firefighter. Consequently, this Court holds that Ulloa does not have a property interest in continued employment as a part-time firefighter.

44. Contravening § 10–2.1–26 of the Illinois Revised Statutes, Oak Forest Ordinance No. 1364 provides that both part-time and full-time firefighters are subject to the same rules and regulations. Specifically, Ordinance No. 1364 states in part that "active members who are part time Fire Fighters serving only on call are part of the Oak Forest Fire Department, and are subject to all rules and regulations in such case made and provided." It is implicit in Ordinance No. 1364 that the Oak Forest City Council desired that the removal for cause requirement made applicable

to the full-time firefighters by § 10–2.1–17 be equally applicable to part-time firefighters. This ordinance, however, is preempted by and inconsistent with § 10–2.1–26 of the Illinois Revised Statute.

45. A municipal ordinance is valid only to the extent that it is consistent with state statutes. *Chicago-Midwest Meat Association v. City of Evanston*, 96 Ill.App.3d 966, 52 Ill.Dec. 524, 422 N.E.2d 205 (1981). Municipal ordinances that are inconsistent with state statutes are unenforceable. Plaintiff Ulloa's interpretation of Ordinance No. 1364 would grant Ulloa, a part-time, paid-on-call fireman, the due process protection afforded full-time firefighters by § 10–2.1–17. Such an interpretation would contravene the expressed mandate of § 10–2.1–26. Consequently, this Court holds that city Ordinance No. 1364 is invalid as it applies to this case because it is preempted by § 10–2.1–26. Therefore, Ulloa's argument that § 10–2.1–17 provides Ulloa with a property interest in his part-time employment is without merit.

46. Ulloa does not have a property interest in continued employment. Absent a property interest, Ulloa is not entitled to the privileges and immunities secured by the Fourteenth Amendment. Therefore, Ulloa could not have been deprived of his due process guarantees of notice and a hearing when he was not reappointed.

47. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

## III. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, this Court hereby orders that:

1. Each and every plaintiff sustained his burden in Count I of proving by a preponderance of the evidence that each plaintiff engaged in constitutionally protected conduct.

2. Each and every plaintiff sustained his burden in Count I of proving by a preponderance of the evidence that each plaintiff's participation in the protected conduct was a "motivating factor" in the defendant's decision not to reappoint each plaintiff.

3. Defendant failed to sustain his burden in Count I of proving by a preponderance of the evidence that each plaintiff would not have been reappointed even if each plaintiff had not supported or campaigned for the election of defendant's opponent.

4. No plaintiff who was an auxiliary member of the police department had a property interest in continued employment, and consequently was not entitled to the privileges and immunities secured by the Fourteenth Amendment.

5. Plaintiff Ulloa who was a paid-on-call firefighter had no property interest in continued employment, and consequently was not entitled to the privileges and immunities secured by the Fourteenth Amendment.

6. Final judgment is hereby entered against defendants Mayor Malecky and the City of Oak Forest and in favor of plaintiffs Kyle, Schoen, Roche, Harralson, Calder, Pasek and Ulloa on Count I.

7. Final judgment is hereby entered against plaintiffs and in favor of defendants on Counts II and III.

8. Under Count I, the plaintiffs are entitled to judgment for back pay against the defendants, the City of Oak Forest and James Malecky, and are entitled to be reinstated and rehired to their former jobs with Oak Forest, and are entitled to judgment against the defendants for their attorney's fees and costs pursuant to 42 U.S.C. § 1988.

9. Plaintiff's counsel is hereby directed to file a petition setting forth the amount of back pay due each plaintiff. Plaintiffs' counsel is also directed to file a petition for attorney's fees. Such petitions shall be filed within ten days.

10. Pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, this Court reserves the right to amend the above findings of fact and conclusions of law, or to

make additional findings and conclusions upon motion of either party made no later than ten days from entry of this order.

IT IS SO ORDERED.