Irving M. GOLDBERG, Stuart E. Goldberg, and Hyman Cohen, Plaintiffs,

v.

The VILLAGE OF SPRING VALLEY, The Spring Valley Urban Renewal Agency, and Joel Rosenthal, Edward Friedman, Jack Rosenberg, Sheila Reitsky, and Clayton Simmons, individually, Defendants.

No. 80 Civ. 3658 (DNE).

United States District Court, S. D. New York.

April 20, 1982.

Goldberg & Goldberg, Spring Valley, N. Y., for plaintiffs.

Henry T. Berger, New York City, for defendants.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDELSTEIN, District Judge:

### I

The Village of Spring Valley is a municipality incorporated under the New York State Village Law.[1] Plaintiff Irving M. Goldberg was an Assistant Village Attorney for the village. Plaintiff Stuart E. Goldberg and plaintiff Hyman Cohen were employed by the Spring Valley Urban Renewal Agency ("SVURA"), a state-established administrative agency, created to supervise urban renewal in the village.[2] Stuart E. Goldberg was counsel for SVURA, while Hyman Cohen was the executive director of SVURA. Defendant Joel Rosenthal is the Mayor of the Village of Spring Valley. Partial summary judgment was granted in favor of the individual trustee defendants, Edward Friedman, Jack Rosenberg, Sheila Reitsky, and Clayton Simmons, at trial, and an opinion accompanies this decision.

In September, 1979, defendant Rosenthal and his slate of candidates[3] were victorious in a Democratic primary election for mayor and trustees of the village. Plaintiffs actively supported the opposition candidates. On December 3, 1979, with the approval of the board of trustees, Mayor Rosenthal appointed Michael Stone as Village Attorney and Sammy Diament and Irving Damast as Assistant Village Attorneys. This action

terminated the position of Assistant Village Attorney held by Irving M. Goldberg. In addition, the board of trustees authorized the transfer of all SVURA funds to the village, thereby eliminating the positions held by Stuart Goldberg and Hyman Cohen. Plaintiffs allege the sole reason for the termination of their employment was the active support they gave to the opponents of defendant Rosenthal and his slate of candidates in the September primary campaign.

On June 27, 1980, plaintiffs commenced this action, presumably pursuant to 42 U.S.C. § 1983,[4] seeking reinstatement to their respective positions, or, in the alternative, damages in the amount of their prospective earnings from the date of the termination of their employment until their respective sixty-fifth birthdays. Plaintiffs allege they were non-policymaking, non-confidential government employees who were satisfactorily performing their duties and that their termination was solely for political reasons and violative of the First and Fourteenth Amendments.[5]

### II

The question to be decided herein may be stated as follows: Whether plaintiffs, Irving M. Goldberg, Stuart E. Goldberg, and Hyman Cohen, were non-policymaking, non-confidential government employees who, for political reasons, were dismissed from jobs they were competently performing. *See Finkel v. Branti*, 457 F.Supp. 1284 (S.D. N.Y.1978), *aff'd without opinion*, 598 F.2d 609 (2d Cir.), *aff'd*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1979); *Nekolny v.*

---

1. N.Y. Village Law § 1–102 *et seq.* (McKinney).

2. Stuart E. Goldberg is the son of Irving M. Goldberg and his partner in the practice of law.

3. The victorious candidates for board of trustees were the individual trustee defendants in this action.

4. Plaintiffs do not allege a basis for federal jurisdiction in their pleadings. This court shall construe this action to be brought pursuant to 42 U.S.C. § 1983, with jurisdiction based on 28 U.S.C. § 1343(3).

5. Although plaintiffs presented evidence at trial on a breach of contract claim, they emphasize in their pre-trial brief that this claim is "merely incidental to the federal question involved". Plaintiffs did not ask the court to exercise pendent jurisdiction over the contract claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, any contract claim has relevance in this action only insofar as it relates to the underlying First Amendment issue.

*Painter,* 653 F.2d 1164 (7th Cir. 1981). *See also Elrod v. Burns,* 427 U.S. 347, 375, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (Stewart, J., concurring). On the basis of the evidence presented at trial, this court finds no proof that plaintiffs were fired because of their political beliefs. Therefore the court finds no violation of the First and Fourteenth Amendments in the dismissal of plaintiffs from their governmental offices.

### III

The Village of Spring Valley is governed by an elected mayor and an elected board of trustees. Under the New York State Village Law each mayor, with the approval of the village board of trustees, may appoint a village attorney and as many assistants as he chooses, subject only to possible budgetary restrictions.[6]

Prior to June 5, 1979, the Village of Spring Valley employed a village attorney and two assistant village attorneys. On that date, the board appointed Irving Goldberg to a newly-created position of Assistant Village Attorney in charge of the prosecution of housing and related matters, at an annual salary of $6,000.

Spring Valley's urban renewal agency, SVURA, was established in 1973 pursuant to a New York State legislative edict to "correct [the] substandard, unsanitary, blighted, deteriorated or deteriorating conditions, factors and characteristics" that existed in the Spring Valley area.[7] The Federal and New York State Governments funded and administered SVURA under the Neighborhood Development Program. In the following years the village board transferred to SVURA additional functions, including the administration of the village's code enforcement and community development programs. SVURA is governed by a board of five members, including the mayor of Spring Valley who is the chairman, and four others appointed by the mayor.

On June 14, 1977, SVURA retained Stuart Goldberg as Attorney for SVURA at an annual fee of $6,600. This retainer was renewed by the SVURA board on September 13, 1978 for a one-year period pursuant to a written agreement, and again on October 23, 1979 for a two year period at an annual fee of $7,590 pursuant to a new written contract.

On October 12, 1978, the SVURA board appointed Hyman Cohen Executive Director of SVURA at an annual salary of $18,000. Approximately one year later, on October 23, 1979, Cohen was reappointed to the same position pursuant to a written contract for a two year term.

The Village of Spring Valley is, and has been during all dates relevant to this proceeding, governed by members of the Democratic Party. Thus, as a practical matter, the Democratic primary is the relevant and most important political contest in the village. In September, 1979, defendant Rosenthal and his slate of candidates triumphed in the Democratic primary over a slate of candidates actively supported by the plaintiffs in this action.

On December 3, 1979, at a regular meeting of the Board of Trustees of Spring Valley, the following actions, *inter alia,* were taken:

(1) The appointment of Michael Stone to the position of Village Attorney, and of Sammy Diament and Irving Damast to the positions of Assistant Village Attorney;

(2) The transfer of all funds, records, property, etc. held by SVURA to the Village of Spring Valley;

(3) The creation of the Department of Community Development and Housing; and

(4) The appointment of Stanley Acker to the position of Director of Community Development and Housing.

On that same date, at a special meeting of the SVURA board of trustees, the board authorized the transfer of all SVURA funds, records, property, etc. to the Village of Spring Valley and terminated all SVURA employment contracts.

---

**6.** *See* N. Y. Village Law §§ 3–301, 4–400 (McKinney).

**7.** N.Y.Gen'l Mun.Law § 591 (McKinney).

As a result of the above actions, Irving M. Goldberg, Stuart E. Goldberg, and Hyman Cohen were removed from their positions. Plaintiffs allege they were dismissed solely because of their political loyalties, that is, their campaign work on behalf of the opposition candidates in the September primary, and this dismissal constituted a violation of their First and Fourteenth Amendment rights. Defendants claim that the termination of plaintiffs' employment was part of a plan to create a more efficient and accessible housing authority by reorganizing the Office of the Village Attorney and transferring the SVURA functions to the newly-created Department of Housing and Community Development. They contend this justifies the dismissals.

## IV

The leading case on the issue presented is *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In that case, the plaintiffs were Republican non-civil service clerical employees in the Cook County, Illinois Sheriff's Office. When control of the office shifted from Republican to Democratic hands, the new sheriff discharged employees who were not supporters or members of the Democratic Party, or did not have the sponsorship of the Democratic leadership. The Supreme Court held that such patronage dismissals violated First Amendment guarantees of free political belief and association. In a plurality opinion, Justice Brennan stated:

> The cost of the practice of patronage is the restraint it places on freedoms of belief and association. In order to maintain their jobs, respondents were required to pledge their political allegiance to the Democratic Party, work for the election of other candidates of the Democratic Party, contribute a portion of their wages to the Party, or obtain the sponsorship of a member of the Party, usually at the price of one of the first three alternatives.

*Id.* at 355, 96 S.Ct. at 2680–81. Justice Brennan noted, however, that certain patronage dismissals were permitted. In the case of "policymaking" employees, the Court observed that the need for political loyalty of employees is sufficient justification for patronage firings. *See id.* at 361, 96 S.Ct. at 2683. Justice Stewart, in a concurring opinion joined by Justice Blackman, framed the issue as follows: "Whether a non-policymaking, non-confidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690.

In *Finkel v. Branti*, 457 F.Supp. 1284 (S.D.N.Y.1978), *aff'd without opinion*, 598 F.2d 609 (2d Cir. 1979), *aff'd*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1979), Judge Vincent Broderick of this court confronted this issue. The plaintiffs, Aaron Finkel and Alan Tabakman, were Republican Assistant Public Defenders in Rockland County, New York. On January 3, 1978, a new Democratic Public Defender, defendant Peter Branti, took office. On that date he began the process of executing termination notices for six of the nine Assistants who had served under his predecessor. Plaintiffs sought a temporary restraining order and a preliminary injunction enjoining defendant from terminating their employment. Judge Broderick issued the requested order and following trial, enjoined the defendant.

In *Finkel*, the court interpreted the *Elrod* concurrence as requiring a three-pronged analysis. It held, first, that plaintiffs were non-policymaking, non-confidential employees in that, with respect to the overall operation of the Public Defender's Office, the Assistants had very limited responsibility, if any. Second, the court found, based upon the evaluations of their superiors and the admission of defendant Branti, that plaintiffs were satisfactorily performing their jobs. Finally, and most important, plaintiffs were found to have been removed from their jobs solely because their political beliefs differed from those of the new Public Defender.[8]

---

8. The sole issue discussed by the Supreme Court on appeal was whether plaintiffs Finkel and Tabakman were non-policymaking and/or non-confidential public employees. *Branti v.*

In *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir. 1981), the Seventh Circuit Court of Appeals used a slightly different test from that used by Judge Broderick in *Finkel.* In *Nekolny*, three employees of Lyons Township, Illinois were fired by the defendant, a newly elected Town Supervisor, after having campaigned vigorously for the incumbent in the election of that year. Plaintiffs alleged they were dismissed because of their campaign activity on behalf of defendant's opponent. The court applied a test used in free-speech cases and enunciated by the Supreme Court in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). An initial burden was placed upon plaintiff to prove that a "substantial" or "motivating" factor in the termination of plaintiff's employment was a reason violative of the First Amendment. Plaintiff, therefore, did not have to meet the more difficult standard of proof used in the *Finkel* case, that is, proving that the *sole* reason for the dismissal was a prohibited one. The burden then shifted to the defendant to prove that the termination would have occurred even if the plaintiff had not worked for the election of the defendant's opponent. *Id.* at 1167–68.

## V

Plaintiffs in the present case allege the termination of their employment was the result of a "deliberate, brazen, and obvious conspiracy" intended to punish them for supporting the opposition slate in the primary election. They allege that the reason for the dismissals was their political activity.

Whether the court applies the "sole reason for removal" test of *Finkel* or the "motivating factor" test of *Nekolny*, plaintiffs have failed to meet their burden. No evidence was presented by the plaintiffs indicating that the dismissals were politically motivated. In addition, defendants have provided a full and complete justification for the termination. Defendants have

*Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1979). This court does not reach that

shown that a total reorganization of the Village Attorneys office was conducted following the election. The positions and responsibilities of the three assistant village attorneys and the SVURA attorney were merged into two assistant village attorney positions. The consolidation and restructuring of the Village Attorneys Office provided an unrebutted justification for the termination of Irving Goldberg's position. The office was restructured so that issues in related areas could be handled by a single attorney. In the area of housing, Sammy Diament was appointed to a position which consolidated all matters in the Village Attorneys' office relating to housing and community development. This, in effect, combined the positions of the assistant village attorney in charge of housing and related matters, SVURA attorney, and assistant village attorney in charge of community development into one assistant village attorney position.

In addition, the transfer of SVURA funds and the dismantlement of SVURA were also shown to have been motivated by factors unrelated to plaintiffs' political loyalties. Prior to December 3, 1979, funding for the Neighborhood Development Program had ceased and the program had been terminated by the Federal government and the State of New York. Since SVURA was established to administer that program, the necessity for such an agency ended as well. On December 3, the village board created the Department of Housing and Community Development and appointed Stanley Acker as Commissioner of the Department. The Department consolidated the code enforcement program of SVURA, which was limited to the urban renewal area, with the code enforcement program of the village, which covered the areas outside the urban renewal area, into a single code enforcement program. The Department is also responsible for economic programs which had not been within the scope of SVURA, including a program to bring new businesses to the village and a program to establish

issue in the present case.

an industrial park in Spring Valley. The motivating factor in the termination of the employment of Stuart Goldberg and Hyman Cohen was shown to be the dismantlement and reorganization of the SVURA and the concomitant termination of all SVURA employees, and not the political loyalties of the plaintiffs. In addition, the village board was unable to appoint Hyman Cohen to the position of Commissioner of Housing and Community Development since that position is subject to civil service classification and has certain job requirements which Cohen does not meet. The Commissioner must have, according to the Rockland County Personnel Office Job Classification Questionnaire, a "college education" and "[e]xperience in Federally related programs with housing experience for a minimum of two years." Testimony at trial indicated that Cohen does not have a college degree, having completed fifty credits toward a degree in nursing. Cohen also does not have the necessary experience in a federal housing program. Stanley Acker, on the other hand, satisfies these job requirements.[9]

Plaintiffs have, therefore, failed to prove that the protected conduct was the motivating factor in the dismissals. In addition, the defendants have adequately demonstrated to the court that the terminations would have occurred even if the plaintiffs had not worked for the election of the defendant Rosenthal's opponent. Plaintiffs' failure and defendants' adequate showing lead the court to hold that plaintiffs' First Amendment rights were not abridged. In doing so, the court does not belittle the constitutional ideals embodied in the First Amendment. However, the need to protect the right of newly-elected public officials to dismiss, for legitimate reasons, employees of prior administrations must also be given serious consideration.

## VI

Plaintiffs have failed to satisfy their burden of proof in this action. Accordingly, defendants are entitled to judgment on the merits.

**9.** Acker has a college degree and served as Director of the federal Section 8 housing pro-

The foregoing shall constitute the court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

gram, first under the village and then in SVURA from 1976 to June 1979.