**Manuel ACEVEDO CORDERO, et al., Plaintiffs,**

v.

**Rafael CORDERO SANTIAGO, et al., Defendants.**

**Civ. No. 89-0986 (JP).**

United States District Court, D. Puerto Rico.

May 28, 1991.

Jesus Hernandez Sanchez, Francisco R. Gonzalez, Hernandez Sanchez Law Firm, Santurce, P.R.

Nicolas Delgado Figueroa, Puerto Nuevo, P.R. (Frederick T. Kuykendall, III, James (Jay) Smith, Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, Ala., of counsel), for Héctor L. Jesús Santiago, et al., and United Steelworkers of America, AFL–CIO.

Director—Federal Litigation Div., Dept. of Justice, San Juan, P.R., for Rafael Cordero Santiago.

Juan Rafael Gonzalez Muñoz, Old San Juan, P.R., for Municipality of Ponce.

Carlos E. Rodriguez Quesada, Dept. of Justice, Hato Rey, P.R., for Rafael Cordero Santiago, Vangie Rivera, Julio Silvagnoli, Luis A. Morales, Enrique Vicéns, Carlos L. Báez, Victor L. Guasp, Pedro Pacheco, Rafael L. Rovira, Daisy Silvagnoli, Jesús Vasallo and Francisco Zayas.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it various motions, including defendants' motion for summary judgment, plaintiffs' motion for partial summary judgment, and defendants' motion for summary judgment based on absolute legislative immunity. In addition, the plaintiffs have filed a motion to amend the complaint, based on the Supreme Court's holding in *Rutan v. Republican Party of Illinois,* — U.S. —, 110 S.Ct. 2729, 111

L.Ed.2d 52 (1990), as well as a motion requesting a preliminary injunction, or alternatively, a permanent injunction, ordering defendants to recall the laid off plaintiffs to available jobs within the Municipality.

This is a political discrimination suit brought pursuant to 42 U.S.C. § 1983, and the First, Fifth, and Fourteenth Amendments of the Constitution of the United States. The case involves the layoff of 600 employees who worked for the Municipality of Ponce. Plaintiffs and intervening plaintiffs (hereinafter "plaintiffs"), some of the 600 laid-off employees, allege that they were regular/permanent employees of the Municipality of Ponce, with the exception of a few who were under contract. All of them worked for the Municipality of Ponce for many years, and all received a notice a termination letter from the Mayor of Ponce, a member of the Popular Democratic Party ("PDP"), stating that their positions were being eliminated by the Municipal Assembly for economic reasons. Plaintiffs allege that the purported economic crisis is a subterfuge, and that they have been singled out for dismissal because of their political affiliation with the New Progressive Party ("NPP").

Defendants contend that their alleged discriminatory action was lawful and in fact implemented pursuant to the relevant laws and regulations. According to the defendants, the Layoff Plan was part of Ordinance No. 43, enacted on March 13, 1989 and approved by Mayor Rafael Cordero Santiago on March 16, 1989, reduced the work force from 2,100 to 1,500 employees, and contemplated the elimination of positions, not individuals, so that plaintiffs had no property interest in continued employment. They further argue that even if such a property right existed, it did not run in perpetuity, after the plaintiffs' jobs had been eliminated, and that even if political discrimination was a motivating factor in defendants' decision to lay off the 600 employees, the decision would have occurred regardless. According to the defendants, the Layoff Plan was implemented in response to a severe fiscal crisis the Municipality was suffering from, and the decision to lay off employees was not motivated by political considerations.

The Court held a hearing on the summary judgment motions, and ordered the parties to submit post-hearing briefs. After thoroughly considering the record before the Court, and for the reasons stated below, we deny both the defendants' and plaintiffs' motions for summary judgment, grant plaintiffs' and intervening plaintiffs' motion to amend the complaint, and deny their request for injunctive relief.

## I. SUMMARY JUDGMENT—THE LEGAL STANDARD

A motion for summary judgment is appropriately granted when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

A "genuine" issue is one that is dispositive and that must be decided at trial. *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990). The issue must be decided at trial because the evidence, when viewed in the light most favorable to the nonmovant, would allow a reasonable juror to resolve the issue in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986); *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). The evidence illuminating the factual controversy cannot be "conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Mack,* 871 F.2d at 181. A "material" fact is one which affects the outcome of the case and must be resolved before consideration of related legal issues. *Municipality of Ponce,* 904 F.2d at 742. Therefore, in a summary judgment motion, the burden is on the moving party to demonstrate "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106

S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986). The nonmovant then bears the burden of establishing the existence of a genuine material issue. *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). However, the nonmovant may not rest upon mere allegations or denial of the pleadings; it must respond, by affidavits or other supporting evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In cases in which the parties have filed cross motions for summary judgment—plaintiffs have filed a partial summary judgment motion in this case—the fact that both parties simultaneously argue that there is no genuine factual issue does not establish that a trial is unnecessary. 10A C. Wright, A. Miller, M. Kane, 10A *Federal Practice and Procedure* § 2720, at 16–17 (1983). In the cross-motion context, the court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of a genuine issue of material fact, and that movant's entitlement to judgment as a matter of law; the fact that one party had failed to sustain its Rule 56 burden does not automatically entitle the opposing party to summary judgment. *Id.* at 23.

II. ABSOLUTE IMMUNITY

The Mayor and his aide, Julio César Silvagnoli–Collazo, as well as the Municipal Assembly members who approved Ordinance No. 43, argue that they are entitled to absolute immunity. These defendants' basic contention is that they were all acting within the "sphere" of their legislative capacity when Ordinance No. 43, which incorporated the Layoff Plan, was enacted and approved, and they are therefore entitled to absolute immunity.[1] We disagree and conclude that pursuant to the relevant case law, these defendants' actions were administrative, and therefore they are not entitled to absolute immunity.

The Supreme Court has spoken on the issue of absolute legislative immunity in several contexts. It has held that the speech or debate clause of the United States Constitution[2] immunizes Congressmen from suits for either prospective relief or damages. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 502–503, 95 S.Ct. 1813, 1820–1821, 44 L.Ed.2d 324 (1975). The reason for this immunity is to maintain and preserve legislative independence when legislators are engaged "in the sphere of legitimate legislative activity," *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951), so that they will "be protected not only from the consequence of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967). The Court has also held that state legislators enjoy common-law immunity from liability for their legislative acts, explaining that this immunity is similar in origin and underlying rationale to the speech and debate clause.[3] *Tenney,* 341 U.S. 367, 71 S.Ct. 783. Finally, in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Court concluded that local legislators acting under

1. The Court originally denied defendants' motion to dismiss based on this ground, *see* Docket Entry # 9, and the defendants have filed a motion for reconsideration, in the form of a request for amended judgment, Docket Entry # 18. Because both the plaintiffs and defendants have submitted documents outside of the pleadings for the Court's consideration and had argued this issue before the Court during the Hearing on Summary Judgment, the original motion to dismiss shall be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(c).

2. Article I, Section 6 of the Constitution of the United States provides, in pertinent part, that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."

3. The Court later modified its position as to common-law immunity rules, stating that while this common-law approach to immunity for governmental officials may be relevant, it is not determinative of Section 1983 immunity. *E.g., Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (retreating from common-law approach to absolute immunity and instead relying on policy considerations supporting doctrine).

the authority of a bi-state regional planning agency will be given absolute immunity when acting in a legislative capacity. In reaching this conclusion, the Court reasoned that the same rationale underlying immunity for federal and state legislators—uninhibited discharge of legislative duty—applies to regional legislators; in addition, the Court suggested that the test for conferring absolute immunity is functional in that regional legislators would be immune from damages when acting in a legislative capacity. 440 U.S. at 405 n. 30, 99 S.Ct. at 1179 n. 30, 59 L.Ed.2d at 413, n. 30.

Although the Court in *Lake Country* left open the issue of absolute immunity for legislative functions performed at the purely local level, 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26, the logical inference from the Court's opinion is that the same reasoning shielding federal, state and regional legislators would apply to local legislators as well. *See id.*, 440 U.S. at 408, 99 S.Ct. at 1180, 59 L.Ed.2d at 414 (Marshall, J., dissenting) ("the majority's reasoning in this case leaves little room to argue that municipal legislators stand on a different footing than their regional counterparts ... The Court's supposition ... applies with equal force, whether officials occupy local or regional positions."). Also, several circuits have held that legislators acting at the purely local level are absolutely immune from suit for actions taken while acting in their legislative capacity. *See, e.g., Haskell v. Washington Township,* 864 F.2d 1266 (6th Cir.1988); *Rateree v. Rockett,* 852 F.2d 946 (7th Cir.1988); *Española Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir. 1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Gorman Towers, Inc. v. Bogoslavksy,* 626 F.2d 607 (8th Cir.1980); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir.1980).

However, not every official with legislative duties is entitled to absolute immunity. As suggested by the above-mentioned cases, the determinative factor in deciding whether local legislators are entitled to absolute immunity is the nature of the challenged act and whether the official was acting in a "legislative" capacity. In order to be afforded absolute immunity, the legislators' decision must involve a degree of discretion and public-policy making which is traditionally associated with the legislative function; the decision must not involve the mere administrative application of existing policies. *Minton v. St. Bernard Parish School,* 803 F.2d 129, 135 (5th Cir.1986). If the challenged decision does not implicate such discretion, the official is only entitled to qualified immunity. *Id.* The First Circuit has adopted a functional, two-pronged approach in deciding when a legislator is engaged in legislative activity and absolutely immune from suit, or administrative activity and qualifiedly immune from suit:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are 'legislative facts', such as 'generalizations concerning a policy or state of affairs', then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the 'particularity of the impact of the state of action.' If the action involves establishment of a general policy, it is legislative; if the action 'single[s] out specifiable individuals and affect[s] them differently from others', it is administrative.

*Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984) (quoting *Developments in the Law—Zoning,* 91 Harv.L.Rev. 1427, 1510–11 (1978)). *See also Vacca v. Barletta,* 933 F.2d 31, 33 (1st Cir.1991) (discussing test for absolute legislative immunity).

In the instant case, the Municipal Assemblymen, as well as the Mayor, claim that the enactment of the Layoff Plan, as part of Ordinance No. 43, was a rearrangement of employment positions taken according to a statutory procedure, because Ordinance No. 43 was passed pursuant to the exercise of legislative powers granted to the Municipal Assembly under Law Number 146, 21 L.P.R.A. § 3051, and the relevant provisions of the Puerto Rico law giving the

Municipal Assembly power to implement a Personnel Administration System designed and submitted by the Mayor, 21 L.P.R.A. § 3068, and sever an employee due to the elimination of that employee's office for lack of work or funds. 3 L.P.R.A. 1336(6)(a). Thus, defendants argue, the Layoff Plan was a broad policy act which involved a complete rearrangement of the personnel system in Ponce and did not involve a single firing decision of a specific position. According to defendants, they were merely responding to a clear lack of work and funds which demanded the elimination of 600 positions.

However, a review of the record [4] reveals that this decision, although purportedly implemented pursuant to legislative powers, was an act which was based on the specific facts related to individuals and the particularity of impact that the First Circuit considers administrative in nature. The jobs which were eliminated applied to specific people, as the Ordinance, Defendants' Exhibit L, lists the specific positions and post numbers to be eliminated. Moreover, plaintiffs have presented evidence that in determining the final list of posts to be eliminated under Ordinance No. 43, a payroll list of *named* employees and corresponding posts [5] to be eliminated was generated and signed by the head of each department, and said lists, with various typed columns designating type of employee, type of pay (hourly or salary) and "termination," as well as hand-written markings such as "Not eliminated by order of the Mayor," were used by people who were working on determining which positions should be eliminated. Plaintiffs' Exhibits 4, 17, 54; Vice Mayor Delis Castillo deposition at 15. Also, the record is clear that the complete rearrangement of the personnel system of classification in Ponce, clearly a more broad-based policy act than the elimination of certain posts, did not occur until well *after* the implementation of the Layoff Plan. *See, e.g.,* deposition of Mayor at 23 (First Advisors Consulting firm designed the new job classification system, the "Classification and Retribution Plan", after the Layoff Plan was designed); deposition of Frank Zorrilla at 31. Moreover, according to the second prong of the *Cutting* test, the Layoff Plan singled out specifiable individuals and affected them differently from others, as some 600 employees were laid off, while the remaining 1,500 employees remained employed.

Although defendants emphasize that Ordinance No. 43 was passed pursuant to the exercise of legitimate legislative powers granted to the Municipal Assembly under various provisions of Puerto Rico law, under the functional analysis approach as established by the Supreme Court and developed by the Circuits, the method by which the challenged decision was made is immaterial, as the test is the nature of the activity, not the way in which it was accomplished. *See Haskell,* 864 F.2d at 1278 (zoning not necessarily legislative activity: if underlying purpose is general policy, zoning is legislative, but if action singles out specific individuals and affects them differently, zoning is administrative); *Rogin v. Bensalem Township,* 616 F.2d 680 (3d Cir. 1980) (zoning amendments constitute general statement of township policy rather than specific applications of policy to a particular landowner, therefore legislative acts). *See also Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118, 1135 (W.D.Pa.1980). The non-legislative nature of the Layoff Plan becomes even more apparent when considering that the Assembly did not conduct any hearings or investigations regarding the Ponce fiscal crisis or assessing the layoff proposal but

4. The Court notes the voluminous nature of the record in this case. In the future, in order to expedite resolution of issues and matters before the Court in this case, the Court requests that the parties submit indexes of exhibits which are submitted to the Court, and that all exhibits be clearly marked and designated as they are designated and referred to in the parties' motions. (*E.g.,* Exhibit 44 contains several annexes which are referred to in depositions but not clearly marked for the Court.)

5. According to the Mayor, the column in Ordinance 43, Exhibit L, describing in written words, the job from which the employee is to be eliminated, is the "classification", and the number in the right-hand column of the list is the position number. Deposition of Mayor at 40.

merely approved the proposed list of positions to be eliminated. *Cf. Tenney,* 341 U.S. at 377–78, 71 S.Ct. at 788–89, 95 L.Ed. at 1027 (members of California Senate Committee on Un–American Activities absolutely immune despite claim of improper purpose since committee investigations are established part of representative government and fall clearly within the bounds of legislative duty protected by immunity).

In order to be absolutely immune, the Mayor must also be acting in a legislative capacity exercising legislative decision-making powers, so that his decision was a "policy-making decision of an individual elected official." *Hernández v. City of Lafayette,* 643 F.2d 1188, 1194 (5th Cir. 1981). Because we have concluded that the Layoff Plan embodied in Ordinance No. 43 and approved by the Mayor on March 16, 1989, was administrative in nature, the Mayor is not entitled to absolute legislative immunity.

Therefore, none of the defendants is entitled to the protection of absolute legislative immunity.

## III. POLITICAL DISCRIMINATION

All of the defendants have filed a summary judgment regarding the issue of political discrimination, basically contending that the Layoff Plan and the actions of the defendants taken subsequent to the enactment of Ordinance No. 43 were not motivated by political discrimination. The plaintiffs have also filed a motion for partial summary judgment, arguing that the defendants decided to enact the Layoff Plan in order to remove Ponce employees who were associated with the NPP party and that the defendants have failed to implement a policy of recalling the laid off employees to fill positions, while new employees are being hired. For the reasons stated below, we deny both motions, concluding that there are genuine issues of material fact surrounding the underlying motives of the implementation of the Layoff Plan, as well as the purported system of recalling laid off employees and the Classification and Retribution system established after the Layoff Plan was effectuated.

### A. *Patronage Dismissals Violative of First Amendment*

Under the standards established by the Supreme Court and adopted by the First Circuit, the "prima facie" case of political discrimination in the form of patronage dismissals [6] violative of First Amendment free association rights requires the plaintiffs to show that their affiliation with the NPP was the substantial or motivating factor underlying their dismissals. *Ferrer v. Zayas,* 914 F.2d 309, 311 (1st Cir.1990) (citing, *inter alia, Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 270, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). *See also Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1172 (1st Cir.1988). We note at the outset that the test for summary judgment remains particularly rigorous when the issue turns on a question of motive or intent. *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988).

The plaintiff bears the initial burden of demonstrating political affiliation as the motivating factor for the defendants' decision, and circumstantial evidence may be sufficient to support this contention. *Estrada–Izquierdo v. Aponte–Roque,* 850 F.2d 10, 14 (1st Cir.1988). The defendant then has the opportunity to come forward and rebut plaintiff's contention by proving that the plaintiffs would have been terminated, regardless of their protected conduct. *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471

6. Although plaintiffs were technically not dismissed, after the enactment of the Layoff Plan, a new classification system was developed so that the reorganization of job positions in the personnel system eliminated some of the plaintiffs' jobs. Although defendants try to argue the defense of reorganization, a genuine issue of fact is in controversy as to whether this reorganization would have occurred despite the political affiliations of plaintiffs. *Duffy v. Sarault,* 892 F.2d 139 (1st Cir.1989).

(1977). For example, when a new administration decides to reorganize or take other cost-cutting measures after winning an election and thereby eliminates the jobs of the plaintiffs, the defendants' decision will be upheld if they can demonstrate that the reorganization would have occurred regardless of the political affiliation of the plaintiffs. *Duffy v. Sarault*, 892 F.2d 139, 146 (1st Cir.1989); *Goldberg v. Village of Spring Valley*, 538 F.Supp. 641 (S.D.N.Y. 1982). Another defense in political discrimination cases in which the plaintiff-employee is alleging a change in job duties which is "unreasonably inferior" to the plaintiff's position is the "changeover" defense, articulated by the First Circuit in *Agosto de Feliciano v. Aponte Roque*, 889 F.2d 1209, 1220 (1st Cir.1989).[7] The new administration claims that the alleged discriminatory actions, taken soon after the change in power, were devised to advance the administration's first-amendment related interest in implementing its policies. *Id.* at 1220. In order to sustain this defense, the government retains the burden of proving that the changes it made shortly after assuming power fit into its overall policy objectives, and that the shift in duties based on political affiliation could be proper where the government can prove that a political employee would be helpful in implementing the new administration's policies. *Id.* at 1221.

Defendants claim that plaintiffs have failed to show that a genuine issue of fact exists as to whether their affiliation to the NPP was the substantial or motivating factor in the Municipality's decision to implement a Layoff Plan, and that even if such an issue exists, summary judgment should be entered because no genuine factual issue exists as to the Municipality's proffered reason for the layoff. However, a review of the record suggests that genuine issues of fact exist since the plaintiffs have shown that their association with the NPP could have been a motivating factor in the layoff, as the reclassification system of job positions in Ponce occurred well after the layoffs, so that the laid off NPP employees' positions were not revised and reclassified when the new Uniform Classification and Retribution Plan was formulated. Mayor deposition at 23; Frank Zorrilla deposition at 33. Also, the plaintiffs have submitted sworn statements declaring that certain comments were made by the Mayor and Luis A. "Wito" Morales–Crespo, the newly elected Municipal Assembly President, during the election campaign, claiming they would rid Ponce of the "grease stain" and the "blue stain" (blue is the symbolic color of the NPP). Declarations made pursuant to 28 U.S.C. § 1746, made by Luis Camacho, Ludgeria León, José Alvarez, Julio Torres, and Delia León. In addition, a number of depositions and exhibits reveal that the decision to implement a massive layoff was made prior to the completion of the financial analysis of the city's fiscal condition. Because the layoff idea originated in early January of 1989, soon after the Mayor took office, *see* Plaintiffs' Exhibit 41, this sudden decision raises an issue of whether the Layoff Plan would have been implemented in the same manner regardless of plaintiffs' political affiliation. *Cf. Agosto*, 889 F.2d at 1221 n. 12 (in evaluating changeover defense, factfinder should consider whether actions occurred precipitately or after some opportunity for appraisal; changes made within days of new administration's ascent to power ordinarily more likely to demonstrate improper political "housecleaning" than changes made months later, after new officials had sufficient opportunity to effectively evaluate reorganization of departments). Although defendants formulated a purported system of recalling the laid-off employees, *see* Defendants' Exhibits Q and R, a factfinder could conclude that the formulation of the recall rules were motivated by political discrimination because: 1) they were established several months after the Layoff Plan was effective, and they precluded some of the NPP laid-off employees from being recalled to different departments; 2)

7. Defendants have admitted that this defense is not factually applicable to the instant case, but argue that the same underlying policy considerations of "recognizing an electoral mandate" apply. *See* deposition of Mayor at 14.

the rules require that some of the laid off employees interview for different positions, since their old positions were eliminated and these positions (and actual jobs duties) were never evaluated and considered when designing the new classification system; 3) the Mayor's address to the Members of the Municipal Assembly for fiscal year 1990–1991 proposes the addition of 75 new municipal guards as well as an increase in the monthly salary of municipal employees. Plaintiff's Exhibit 47. Therefore, a perusal of the record in this case suggests pattern of layoffs and failure to reclassify and rehire that could lead a juror to conclude that the defendants' underlying motive for the Layoff Plan was political. *See Caro v. Aponte–Roque,* 878 F.2d 1, 4 (1st Cir.1989) (conflicting evidence related to the reason for elimination of positions: according to defendant, positions were abolished, but plaintiffs claimed new PDP appointees hired for new jobs and assumed salaries and jobs responsibilities equivalent to those from which plaintiffs had been removed).

Pursuant to a previous Order of this Court, the plaintiffs and defendants have submitted numbers corresponding to how many new employees, in positions other than confidential positions, have been hired by the Municipality of Ponce after January of 1989. Defendants have submitted a list of 98 names, 61 of which obtained their employment in regular career service after competing for the position, 21 whom have been hired into the Job Training Partnership ACT ("JPTA") program and 16 new employees hired into the Housing and Urban Development ("HUD") program, all of whom acquired these positions after seeing a public notice and competing for the position. The most recent list of employees in the Municipality of Ponce plaintiffs have submitted states that "the latest payroll statement shows that there are now 1,761 employees at the Municipality of Ponce, out of which 382 are contractual employees and 1,379 are regular employees ... There are at least 48 positions which were eliminated by the Municipal Assembly now occupied by new employees ... So there are 48 positions eliminated by a Public Ordinance which were assigned to new employees." Intervening plaintiffs have submitted a list of 148 new employees, excluding non-confidential employees, hired by the defendants after January 9, 1989, each of whom either replaced a laid-off employee not rehired or recalled, or was hired for a new position. In light of the fact that none of the parties have submitted similar lists of employees who have been newly hired after the massive layoff and the establishment of the Classification and Retribution system, and there is no uniform list related to which of the plaintiffs' job responsibilities (whether correlating to their job title or not) were replaced by these new employees under the new classification system, the plaintiffs and intervening plaintiffs are ORDERED to submit, within 20 days, a list of each *plaintiff and intervening plaintiff,* the job position held by that plaintiff before the Layoff Plan was enacted, including the classification (description of duties), job post number and actual duties and responsibilities the employee held, and the newly hired employee who allegedly replaced the plaintiff, as well as the political affiliation of the newly hired employee. Another list shall include all the newly created positions (included in Analysis I of the Intervening plaintiffs' detailed analysis) for non-confidential employees, and the political party of each newly hired employee. Because of the voluminous nature of the record in this case, and the reams of lists the parties have filed, we conclude that the information to be submitted, will be in its most condensed, succinct form, and will focus all further proceedings in this case so that: 1) the issues will be clearly set forth for the Court; 2) the defendants will be given an adequate opportunity to rebut the factual issues the plaintiffs have raised; and 3) the case will proceed to trial in an efficient and effective manner. *See* Civil Justice Reform Act of 1990, Pub.Law No. 101–650, § 103 (also known as the "Biden Bill"), 28 U.S.C. § 471, *et seq.*

### B. *Patronage Dismissals Violative of Due Process*

It is well settled that the due process clause of the fourteenth amendment guar-

antees public employees who have a property interest in continued employment the right to at least an informal hearing before they are discharged. *Kauffman*, 841 F.2d at 1173 (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985)). It is also well established that a stated employee's job is "property" only if state law gives employees such "property" rights in their continued employment. *Cleveland Board of Education*, 470 U.S. at 538, 105 S.Ct. at 1491.

The First Circuit has recognized an exception to this general rule known as the "reorganization exception" to due process hearings. *See Duffy*, 892 F.2d at 147; *Misek v. City of Chicago*, 783 F.2d 98, 100–01 (7th Cir.1986). As mentioned above, under this exception, when a reorganization or other cost-cutting measure results in the dismissal of an employee, no hearing is due. *Duffy*, 892 F.2d at 147.

The plaintiffs have alleged that the Layoff Plan was a violation of their procedural due process rights guaranteed by the due process clause of the fourteenth amendment of the United States Constitution. Defendants argue that plaintiffs were not denied their due process rights since they had no property interest in continued employment. Citing *Duffy*, defendants assert that the plaintiffs' jobs were eliminated due to a valid economic reorganization of the personnel system. Because we have concluded there is a genuine issue of fact related to the enactment of the Layoff Plan and the subsequent reorganization of the Municipality job classification system several months *after* the Layoff Plan was effective, we similarly conclude that under plaintiffs' due process claim, a trier could find that the reorganization was pretextual. *Cf. Duffy* at 147 (court's *Mt. Healthy* findings that reorganization was valid did not require additional determination under due process claim).

Under Puerto Rico Law, the plaintiffs holding "career" or tenured jobs possess "property rights" in their continued employment. *Kauffman*, 841 F.2d at 1173. Because several of the plaintiffs were not "career" employees and under Puerto Rico Law, are not entitled to any expectation of continued employment beyond their yearly appointment, *Caro*, 878 F.2d at 4, the plaintiffs are further ORDERED to submit, in addition to plaintiffs' list which will include, *inter alia*, each plaintiff who has been and remains laid off and who was a transitory or contract employee, a legal brief explaining why these contractual or transitional employees have a property interest protectible and actionable under the fourteenth amendment of the United States Constitution.

## IV. REMAINING MOTIONS

Plaintiffs have requested to amend the complaint in light of the Supreme Court's recent ruling in *Rutan v. Republican Party of Illinois*, — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). "A court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory directive or legislative history to the contrary." *Graves v. Smith's Transfer Corp.*, 736 F.2d 819, 820 (1st Cir.1984) (citations omitted). Furthermore, the retroactive application of judicial decision of the federal court is the general rule, not the exception. *Simpson v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 681 F.2d 81, 84 (1st Cir.1982). Because we find no manifest injustice or statutory directive to the contrary, we GRANT the motion to amend the complaint.

The Court also has before it plaintiffs' motion for entry of preliminary or permanent injunction. Because we conclude that plaintiffs have not satisfactorily met their burden of proving the required elements for granting either a preliminary or permanent injunction, *see, e.g., Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258, 259 (1st Cir.1987); *Planned Parenthood League of Massachusetts v. Belloti*, 641 F.2d 1006, 1009 (1st Cir.1981), we DENY this motion.

## V. CONCLUSION

Wherefore, in view of the foregoing, the defendants' motions for summary judg-

ment based on the issues of absolute legislative immunity and political discrimination are DENIED. Plaintiff's motion for partial summary judgment is also DENIED, as well as their request for injunctive relief. Because the plaintiffs have previously moved for the voluntary dismissal of the complaint as to codefendant Vangie Rivera, Partial Judgment, Nunc Pro Tunc, shall be entered accordingly.

A status conference in this case is hereby SET for June 28, 1991, at 2:00 p.m. The parties should be prepared to thoroughly discuss the original plaintiffs' proposal to bifurcate the trial into liability and damages phases. *See* Docket # 43.

IT IS SO ORDERED.